**JORDAN K. CAMERON (12051)**
   *jcameron@hjslaw.com*
**DURHAM, JONES & PINEGAR, P.C.**
3301 N. Thanksgiving Way, Suite 400
Lehi, UT 84043
Telephone: (801) 375-6600
Fax: (801)375-3865

*Attorneys for Plaintiff ZooBuh, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ZOOBUH, INC., a Utah Corporation<br><br>    Plaintiff,<br><br>vs.<br><br>JDI DATING, LTD; WILLIAM MARK THOMAS,<br><br>    Defendants. | **COMPLAINT**<br><br><br>Case No.:  2:17cv00163 DB<br><br>Judge Dee Benson |

COMES NOW Plaintiff ZooBuh, Inc. ("ZooBuh"), and complains and alleges the following:

PARTIES, JURISDICTION AND VENUE

1.    Plaintiff ZooBuh ("**ZooBuh**"), is a Utah Corporation with its principal place of business in Utah County, Utah, and at all relevant times hereto was duly registered and licensed to do business in the State of Utah.

2.    Defendant JDI Dating, Ltd. ("**JDI**"), is a United Kingdom private limited company with its principal place of business at 3600 Solent Business Centre, 1st Floor, Whitely, Hampshire, United Kingdom PO15 7AN.  JDI transacts or has transacted business in this district.

3. Defendant William Mark Thomas ("**Thomas**") is an owner, officer, and director of Defendant JDI and its Chief Executive Officer. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant JDI, including the acts and practices set forth in this Complaint. Defendant Thomas, in connection with the matters alleged herein, transacts or has transacted business in this district.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), for violations of the 15 U.S.C. §7701 *et seq.* (CAN-SPAM Act of 2003), and pursuant to 15 U.S.C. § 7706(g)(1) (original jurisdiction) for cases involving a civil action by an internet access service adversely affected by a violation of 15 U.S.C. §7704(a)(1), 15 U.S.C. §7704(b), or 15 U.S.C. § 7704(d), or a pattern and practice that violates subparagraphs (2), (3), (4), and/or (5) of 15 U.S.C. § 7704(a)

5. This Court has personal jurisdiction over the Defendants because the Defendants, and each of them, are residents of the state of Utah, are businesses organized and existing under the laws of the state of Utah, and/or because Defendants have purposefully availed themselves of the privileges of conducting commercial activity in the forum state, and the exercise of jurisdiction is reasonable since Defendants should have known that they would be subject to the jurisdiction and laws of the forum state when they sent, or had commercial emails sent to customers of an email service provider located in Utah.

6. Venue is proper pursuant to 18 U.S.C. §1391, as a substantial part of the unlawful actions by the Defendants, and each of them, occurred in this judicial district.

## GENERAL ALLEGATIONS

7. During all times relevant hereto, and through the date of the filing of this Complaint, ZooBuh was a corporation duly existing under the laws of the State of Utah which provided access to, and enabled and hosted email, chat, and blog services for private parties.

8. ZooBuh was first formed in 2002, prior to the existence of the CAN-SPAM Act.

9. ZooBuh is a widely and well recognized service provider of email, blog, and chat services.

10. ZooBuh has been featured in articles, published in *PC Advisor, PC Magazine, Tech World, The Guardian, Find it Quick Internet Guide,* and *Yahoo's Associated Content* and has been mentioned in the following books: How to Protect Your Children on the Internet, by Gregory S. Smith and CyberSafety, by Ken Knapton.  ZooBuh has also been mentioned and/or featured on KSL News' Nanny Radio Show and WBTV.

11. ZooBuh owns all the servers, routers, and switches on its network through which it hosts and provides its Internet access services for its customers.

12. ZooBuh has an expansive network and infrastructure, which it has had to consistently update, upgrade and augment in order to combat ongoing spam problems.

13. ZooBuh is the sole owner of all its hardware, and has complete and uninhibited access to, and sole physical control over, the hardware.

14. As a legitimate email service provider, ZooBuh is a bona fide Internet Access Service ("IAS") as that is term defined under 15 U.S.C. §7702(11), 47 U.S.C. §231(e)(4).

15. Every one of ZooBuh's customer's email accounts is registered, hosted and serviced through ZooBuh's own hardware.

16. ZooBuh also provides each of its customers with their own web-based portal through which they access their selected web based services (e.g., email, blogs, chat, etc.).

17. ZooBuh designed, created, and controls the web-based portal.

18. ZooBuh stores the routers, switches, and servers in a leased office space which offers server rack space, redundant Internet connections, physical security, and climate controls.

19. The accounts hosted and served by ZooBuh include email accounts owned by third-party customers of ZooBuh, and also include email accounts owned by ZooBuh.

20. Since at least 2013, Defendants have operated an online dating service comprised of eighteen different Internet websites, including cupidswand.com, flirtcrowd.com, and findmelove.com.  Defendants also operate a company website at jdidating.com.

21. The purpose of Defendants' online dating service websites is to provide a forum where users of Defendants' service can contact and communicate with other like-minded people over the Internet, typically for the express or implied purpose of developing personal, romantic, or sexual relationships.

22. Defendants' online dating service websites offer both pay-based membership plans and free membership plans that allow consumers to set up a profile at no cost.

23. When enrolling in Defendants' service, consumers are required to provide an e-mail address.  Defendants use this e-mail address to communicate with consumers regarding enrollment in Defendants' online dating service and to provide enrolled consumers with notifications about activity directed to the consumer's profile.  For example, consumers may receive an e-mail from Defendants when another user has viewed the consumer's profile, or sent the consumer a message, wink, or flirt.

4

24. Almost immediately after completing the enrollment process, users begin to receive e-mails from Defendants notifying them that they have received communications from other users. For example, within minutes of enrolling, users typically receive an e-mail notification indicating that another user has sent a "wink."

25. Defendants also send many similar advertising emails to people who have not enrolled in order to drive traffic to their websites.

26. In many instances, the communications consumers receive are not from actual users of Defendants' online dating service, but rather are from "Virtual Cupids"—that is, fake users set up by Defendants who communicate with consumers in the same way that actual users would. Defendants send these Virtual Cupid communications, sent via e-mail, in connection with the advertising, marketing, promotion, offering for sale, or sale of their online dating service.

27. Through these messages, Defendants represented, directly or indirectly, expressly or by implication, that communications received by users of Defendants' service are from actual people interested in communicating with those users.

28. In truth and in fact, in numerous instances, the communications are not from actual people interested in communicating with the recipient, but instead are from computer generated virtual profiles created by Defendants to drive traffic to Defendant's websites under false pretenses.

29. Between January 2014 and 2015 ZooBuh received a total of approximately 14,209 electronic-mail messages ("email") sent and/or initiated by the Defendants collectively,

5

which independently and collectively caused significant adverse effect to ZooBuh and which independently and collectively, contributed to an overall spam problem.

30. Defendant JDI is responsible as the "sender" of the emails in question, as defined in the CAN-SPAM Act, because its product, service, and/or website is/are advertised in the email messages, and it either transmitted or procured the transmission of the emails in question.

31. Defendant Thomas is liable as the "initiator" of the emails in question, as defined in the CAN-SPAM Act, because he either transmitted or procured the transmission of the emails in question.

32. The JDI emails were sent to minors under the age of 18 and contained advertisements for adult themed dating websites. Additionally, many of the subject headings used explicit and profane language inappropriate for the targeted recipients.

33. Each of the emails is a commercial message and contains commercial content.

34. The emails, and each of them, were received by ZooBuh on its mail servers located in Utah.

35. The harm ZooBuh has suffered and continues to suffer, as the result of its collective spam problem is much more significant than the mere annoyance of having to deal with spam or the process of dealing with spam in the ordinary course of business (i.e., installing a spam filter to discard spam).

36. The harm ZooBuh suffered, and continues to suffer, is manifested in financial expense and burden significant to an ISP; lost employee time; lost profitability; the necessity to purchase and dedicate equipment specifically to process spam that could otherwise be dedicated

providing internet access services; harm to reputation; and customer and email recipient complaints relating to spam generally.

37. Each of the emails in question violates one or more CAN-SPAM provisions.

38. The majority of emails received by ZooBuh, including the emails in question, violate the CAN-SPAM Act in one or more ways, and contributed to a larger spam problem.

### FIRST CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)**

39. Each of the previous paragraphs is realleged herein.

40. The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. §7704(a)(1).

41. An email header is materially misleading when it impairs the ability of an Internet access service processing the message on behalf of a recipient to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation, or the ability of a recipient of the message to respond to a person who initiated the electronic message.

42. Email headers can be materially misleading in many ways, including as examples when Header Information includes: false sender email accounts; false sender names; false sender email addresses; header information that is registered to unrelated third parties; altered or concealed header information that impairs the ability of a party processing the message to identify or respond to the transmitting party.

43. For example, 10,824 of the emails in question were sent from hundreds of different email addresses, all containing female "from" names. However, every email domain

was purportedly registered to the same person, who was not identified in the "from" of any email.

44. Similarly, 3,010 of the emails in question were sent from various different email addresses, all containing female "from" names. However, every email domain was purportedly registered to the same person, a male, who was not identified in the "from" of any email.

45. None of the emails in question identified a real person in the "from" though each was purportedly sent from a female looking to connect romantically with the recipient. Therefore, each of the 14,209 emails in question contained false or misleading header information in the "from" name.

46. 14,209 emails associated with Defendants violate §7704(a)(1) in one or more of the ways set forth herein.

47. Accordingly, ZooBuh prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3).

SECOND CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)(A)**

48. Each of the previous paragraphs is realleged herein.

49. The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. §7704(a)(1).

50. "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading." 15 U.S.C. § 7704(a)(1)(A).

8

51. An email that originated from a sender domain registered with an ICANN compliant domain registrar who maintains an anti-spam policy, violates the law regardless of whether the email contains a header that is technically accurate.

52. At least 13,719 emails associated with Defendants violate §7704(a)(1)(A) because they originated from sender domains obtained in violation of Registrar policies.

53. In order to obtain the domain names from which to send emails, domain registrants are required to provide a name and address to the domain registrar for inclusion in the public WHOIS database.

54. The name and address provided by the domain registrant to the domain registrar constitute material representations.

55. Here, the registrants provided false names and/or addresses when they registered domains and therefore obtained access to use the domains to send email through a false representation in violation of §7704(a)(1)(A).

56. For example, the registrants used addresses that, according to the Postmaster, are not affiliated with the registrant.

57. The Defendants intended that the domain names were to be used, and the domain names were used, to send Spam emails in question.

58. At least 3,013 of the emails in question violate § 7704(a)(1)(A) because they originated from sender domains registered with false information.

59. Accordingly, ZooBuh prays for relief in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3).

### THIRD CAUSE OF ACTION
### CAN-SPAM ACT, 15 U.S.C. § 7704(a)(2)

60. Each of the previous paragraphs is realleged herein.

61. The CAN-SPAM Act makes it unlawful for any person to "initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2).

62. At least 14,209 emails associated with Defendants violate §7704(a)(2) in that the Subject Heading was misleading or likely to mislead a recipient about a material fact regarding the contents or subject matter of the email message (i.e., that an actual living person is attempting to communicate with the recipient for romantic purposes).

63. Accordingly, ZooBuh prays for relief in the amount of $25 per violation of 15 U.S.C. § 7704(a)(2) pursuant to 15 U.S.C. § 7706(g)(3).

### FOURTH CAUSE OF ACTION
### CAN-SPAM Act 15 U.S.C. §7704(a)(5)

64. Each of the previous paragraphs is realleged herein.

65. The CAN-SPAM Act states that "[i]t is unlawful for any person to initiate the transmission of any commercial electronic mail message to a protected computer unless the message provides (i) clear and conspicuous identification that the message is an advertisement or solicitation; (ii) clear and conspicuous notice of the opportunity under paragraph (3) to decline to

10

receive further commercial electronic mail messages from the sender; and (iii) a valid physical postal address of the sender." 15 U.S.C. § 7705(a)(5).

66.  At least 13,421 emails do not contain a clearly and conspicuously displayed physical address in the email.

67.  This account for 95% of the total number of emails in question.

68.  The percentage of the total number of emails from each specific defendant that contain violations of 15 U.S.C. § 7704(a)(5) demonstrates that the Defendants identified in this Cause of Action engaged in a pattern or practice of violating this provision.

69.  Accordingly, ZooBuh prays for relief in the amount of $25 per violation of 15 U.S.C § 7704(a)(2) pursuant to 15 U.S.C. § 7706(g)(3).

FIFTH CAUSE OF ACTION
**Aggravated Damages – CAN-SPAM Act 15 U.S.C §7706(g)(3)(C)**

70.  Each of the previous paragraphs is realleged herein.

71.  On information and belief, each of the Defendants committed the violations set forth above willfully and knowingly; or, in the alternative, each of the Defendant's unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

72.  Specifically:

   a. Defendants knew that the "from" names did not identify actual, living females;

   b. Defendants knew that they provided false names and addresses in registering domains from which to send emails in order to avoid detection by spam filtering services, law enforcement and private party plaintiffs such as ZooBuh;

   c. Defendant also knew that they were not providing physical addresses in the bodies of the emails, as required by the CAN-SPAM Act.

11

73. Accordingly, ZooBuh prays for treble damages of the total damage amount determined by this Court.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

A. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1).

B. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1)(A).

C. Entry of judgment in the amount of $25 per violation of 15 U.S.C. § 7704(a)(2).

D. Entry of judgment in the amount of $25 per violation of 15 U.S.C. § 7704(a)(5).

E. Treble damages pursuant to 15 U.S.C. § 7706(g)(3).

F. Attorneys' fees and costs pursuant to 15 U.S.C. § 7706(g)(4).

G. Pre and post-judgment interest at the highest rate permitted by law.

H. Entry of permanent injunction against each Defendant prohibiting each Defendant from sending or causing to be sent email message to ZooBuh and its customers.

I. All other relief deemed just in law or equity by this Court.

DATED this 7th day of March 2017.

DURHAM, JONES & PINEGAR, P.C.


/s/ Jordan K. Cameron
Jordan K. Cameron
*Attorneys for Plaintiff*

**Plaintiff's Address**
5406 W 11000 N
Ste 103, #166
Highland UT 84003
United States